O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES HUMBLE-SANCHEZ,        )   Case No. EDCV 07-222-VAP
                             )   (OPx)
                Plaintiff,   )
                             )   **[Motion filed on June 2,**
        v.                   )   **2008]**
                             )
MICHAEL CHERTOFF,            )   **ORDER GRANTING DEFENDANT'S**
Secretary, U.S. Dept. of     )   **MOTION FOR SUMMARY JUDGMENT**
Homeland Security;           )
ALBERTO GONZALEZ,            )
Attorney General United      )
States,                      )
                             )
                Defendants.  )
_____)

     Defendant Michael Chertoff's Motion for Summary

Judgment came before this Court for hearing on July 14,

2008.  After reviewing and considering all papers filed

in support of, and in opposition to, the Motion, as well

as the arguments advanced by counsel at the hearing, the

Court GRANTS the Motion.


                    **I. BACKGROUND**

     Plaintiff filed a Complaint on February 26, 2007,

alleging claims for national origin discrimination and

1  retaliation in violation of Title VII of the Civil Rights

2  Act of 1964 ("Title VII"), 42 U.S.C. sections 2000e-2 and

3  2000e-3, against Defendant Michael Chertoff, Secretary of

4  the U.S. Department of Homeland Security.[1]  Plaintiff

5  filed a First Amended Complaint on August 13, 2007.  On

6  October 17, 2007, Plaintiff filed the operative pleading,

7  the Second Amended Complaint ("SAC"), alleging the same

8  claims for national origin discrimination and

9  retaliation.[2]

10

11     On June 2, 2008, Defendant filed a Motion for Summary

12  Judgment ("Motion" or "Mot."), along with a Statement of

13  Uncontroverted Facts ("Def.'s SUF") and the declarations

14  of Rosemary Langley Melville ("Melville Decl."), Loraine

15  E. Brown ("Brown Decl."), and John Barkley.  Plaintiff

16  filed a "Response to the Defendant's Motion for Summary

17  _____

18     [1]By Order dated June 6, 2007, the Court dismissed
   then-Attorney General Alberto Gonzales, who also was
19  named as a Defendant.

20     [2]Also as part of this case, Plaintiff seeks review of
   decisions by the Merit Systems Protection Board ("MSPB")
21  concerning Plaintiff's employment.  A federal employee
   who claims he has been affected by both an "adverse
22  employment action" and a related Title VII violation may
   seek review of his "mixed case" before the MSPB without
23  having to exhaust his Title VII claims before the Equal
   Employment Opportunity Commission.  Sloan v. West, 140
24  F.3d 1255, 1259 (9th Cir. 1998).  The MSPB's ruling may
   then be appealed to a federal district court, which
25  reviews the MSPB's determination of the non-
   discrimination claim under a deferential standard
26  pursuant to 5 U.S.C. section 7703(c), and reviews the
   discrimination claim de novo.  Sloan, 140 F.3d at 1260
27  (citing Washington v. Garrett, 10 F.3d 1421, 1428 (9th
   Cir. 1993)).  The Court reviews the MSPB's decisions in a
28  separate Order.

1   Judgment" ("Opp'n") on June 9, 2008, along with a
2   "Response to the Defendant's [Proposed] Statement of
3   Uncontroverted Facts" and a "Statement of Genuine Issues
4   of Material Fact."  Defendant filed a Reply on June 16,
5   2008.
6
7        By Minute Order dated June 18, 2008, Magistrate Judge
8   Oswald Parada granted in part Plaintiff's motion to
9   compel production of certain documents.  ("Discovery
10  Order," Docket No. 77.)  The parties then filed a
11  Stipulation to continue the June 23, 2008, hearing date
12  on Defendant's Motion for Summary Judgment until July 14,
13  2008.  The Court continued the hearing and ordered
14  supplemental briefing based on any additional discovery.
15  (Docket No. 79.)
16
17       On July 7, 2008, Plaintiff filed a Supplemental
18  Response to the Defendant's Motion; Defendant filed a
19  Supplemental Memorandum in support of its Motion on July
20  11, 2008.
21
22                   **II. LEGAL STANDARD**
23       A motion for summary judgment shall be granted when
24  there is no genuine issue as to any material fact and the
25  moving party is entitled to judgment as a matter of law.
26  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>,
27  477 U.S. 242, 247-48 (1986).  The moving party must show
28

that "under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998); <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case.  <u>Id.</u>

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all

4

matters placed in issue by the motion as to which it has the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252.  <u>See also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson</u>, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Electrical Serv. Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III.  UNCONTROVERTED FACTS

**A.   Uncontroverted Facts Shown by Defendant**

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of this Motion.  <u>See</u> Local Rule 56-3.

**1.   Plaintiff's non-selection for two supervisory positions**

In 1998, while employed as a criminal investigator for the Immigration and Naturalization Service ("INS"),

1   Plaintiff James Humble-Sanchez applied for two
2   supervisory criminal investigator positions. (Def.'s SUF
3   ¶ 1.)   One of the openings was in the Los Angeles INS
4   office, while the other was in the Ventura office. (<u>Id.</u>)
5   Rosemary Melville, the acting district director for the
6   Los Angeles district of the INS, made both hiring
7   decisions based on a list of qualified candidates
8   provided by the human resources department. (<u>Id.</u> ¶ 2;
9   Melville Decl. ¶ 3.)   John McAllister, the assistant
10  district director for investigations, provided Melville
11  with recommendations for each position:  Janet Shanks-
12  Jones for the Los Angeles position and Sean Kelly for the
13  Ventura position.  He did not recommend Plaintiff for
14  either.  (Def.'s SUF ¶¶ 3, 4.)

15

16      Melville selected Shanks-Jones and Kelly for the
17  positions, because she believed they were the best
18  candidates for the positions. (<u>Id.</u> ¶ 8.)  She did not
19  consider Plaintiff to have the leadership qualities shown
20  by Shanks-Jones and Kelly. (<u>Id.</u> ¶ 10.)  In testifying at
21  Plaintiff's MSPB hearing about why he was not selected,
22  Melville described two incidents leading her to conclude
23  that "he was not a team player." (<u>Id.</u> ¶ 11.)  In one,
24  Plaintiff locked a computer database with a password,
25  despite instructions not to do so on both a national and
26  local level. (<u>Id.</u> ¶ 12.)  After Plaintiff agreed to
27  unlock the database and remove the password, he did not
28

do so.  (Id. ¶ 13.)  Melville had to request that persons
from the information technology department unlock the
database.  (Id. ¶ 14.)  Melville stated that she found
Plaintiff's actions irresponsible and uncooperative.
(Id. ¶ 15.)

In another incident, Plaintiff did not leave behind
the keys to the government car he used while he was on
leave.  (Id. ¶¶ 16, 18.)  Melville testified at
Plaintiff's MSPB hearing that when she was out of the
office for an extended period, she would leave behind the
keys to her government car so that others could use it.
(Id. ¶ 18.)  When Plaintiff was contacted during his
leave and asked for the car, he created a "hassle" rather
than simply turning over the keys.  (Id. ¶ 19.)
According to Melville, the computer incident and the car
incident did not show "the kind of leadership skills that
I was hoping to see in a supervisor."[3]  (Id. ¶ 20.)

_____

[3]In order to refresh her recollection about the
reasons McAllister expressed for recommending Shanks-
Jones and Kelly, Melville reviewed McAllister's affidavit
explaining his decisions in an unrelated case.  (Melville
Decl. ¶ 5.)  Melville states that reviewing the affidavit
refreshes her recollection, and that she remembers
McAllister telling her "in essence what is contained in
... Exhibit 7 [the affidavit]."  (Id.)  The affidavit is
unsigned, however, and McAllister has passed away.  (Id.)
The Court cannot consider the reasons stated by
McAllister in his affidavit, because they are hearsay
statements not subject to any exception.  While it is
appropriate for a witness's recollection to be refreshed
by a document, the witness must then testify from her own
refreshed recollection; the document itself does not come
into evidence.  Fed. R. Evid. 612.

1    Melville states that she did not make her selections

2  for the Los Angeles and Ventura positions on the basis of

3  any unlawful retaliation or any other improper or illegal

4  factor.  (Id. ¶ 21.)

5

6    **2.  Termination of Plaintiff's employment**

7    In 2003, the INS became part of the U.S. Department

8  of Homeland Security Bureau of Immigration and Customs

9  Enforcement ("ICE" or the "agency").  (Id. ¶ 22.)  On

10 July 29, 2003, the agency gave notice to Plaintiff that

11 it proposed to terminate his employment based on a "lack

12 of candor" and a "failure to cooperate in an official

13 investigation."  (Id. ¶ 80; Brown Decl. Ex. 11 (AR Vol. 1

14 159-60).)  On November 10, 2003, the United States

15 Attorney sent ICE a letter stating that because the

16 proposal to remove Plaintiff related to his credibility,

17 he should not have responsibility in criminal

18 investigations that would require him to testify as a

19 witness in court.  (Id. ¶ 72.)  By letters dated October

20 7, 2005, Plaintiff was informed that ICE had rescinded

21 its July 29, 2003, proposal for removal and was issuing a

22 new proposal to remove Plaintiff from his federal

23 employment.[4]  (Id. ¶¶ 80-81.)  The October 2005 letter

24 identified two grounds for the proposed removal:

25 Plaintiff's "lack of candor" and his "inability to

26 ────────────────

27    [4]Defendant initially listed the date of this letter
   as October 17, 2005, (Def.'s SUF ¶ 81), but corrected it
28 after Plaintiff pointed out the error.  (Reply at 2 n.6.)

1  perform the full range of Special Agent duties."  (Id. ¶
2  82; Brown Decl. Ex. 19 (AR Vol. 1 at 91, 93).)  By letter
3  dated December 2, 2005, the Special Agent in charge of
4  the Los Angeles district office of ICE, Loraine Brown,
5  issued a decision removing Plaintiff from federal
6  employment.  (Id. ¶¶ 24-28.)  Before deciding to
7  terminate Plaintiff, Brown reviewed records relating to
8  Plaintiff's proposed removal.  (Id. ¶ 29.)  The documents
9  Brown reviewed were included in the Administrative Record
10 of Plaintiff's MSPB case, and Defendant has filed 24
11 volumes of that record under seal in this case.[5]  (Id. ¶¶
12 29-31; Docket Nos. 43-66.)

13

14      Brown states that her decision to terminate Plaintiff
15 was not based on any unlawful retaliation, nor was it
16 based on Plaintiff's national origin.  (Id. ¶ 28.)

17

18      **3.  "Lack of candor" charge**
19      The documents reviewed by Brown relating to the "lack
20 of candor" charge described the agency's concern that
21 Plaintiff had enrolled a spouse and two children for
22 health benefits, even though he later filled out another
23 form under penalty of perjury stating that he had never
24 been married and had no children.  (Def.'s SUF ¶¶ 32-34,
25 49-50.)  The agency recovered documents, including birth
26 certificates and court records, indicating that Plaintiff

27 _____

28      [5]The Administrative Record is cited to as "AR."

1 was the father of four children and that his marriage to
2 the woman listed as his wife on his health benefit forms
3 was annulled.  (Id. ¶¶ 51-56.)  The agency conducted an
4 interview of Plaintiff on January 25, 2002, to clear up
5 any discrepancies, and the letter proposing Plaintiff's
6 removal cited his "evasive and deceptive" responses
7 during that interview.  (Def.'s SUF ¶¶ 60-64, 83.)
8
9     The documents reviewed by Brown also indicated that,
10 while under consideration for a security clearance,
11 Plaintiff had not provided all of the answers requested
12 on a Standard Form 86, or SF-86, which is a questionnaire
13 for national security positions.  (Id. ¶¶ 35-36.)
14 Plaintiff initially did not submit all of the pages of
15 the questionnaire, and when asked follow-up questions,
16 did not provide responses.  (Id. ¶¶ 37-46.)  Notes
17 written by agency staff indicated that Plaintiff signed
18 the SF-86 "after much hesitation."  (Id. ¶ 47.)
19
20     **4.   Charge of "inability to perform the full range**
21     **     of Special Agent duties**"
22     The documents reviewed by Brown relating to the
23 charge that Plaintiff could not perform his duties as a
24 Special Agent indicated that Plaintiff had been denied a
25 security clearance for access to classified information.
26 (Id. ¶ 73.)  The denial was based on a failure to
27 cooperate and a failure to provide accurate information.
28

1   (<u>Id.</u> ¶ 74.)  The letter denying Plaintiff's security

2   clearance, which Brown reviewed, noted that Plaintiff

3   continued to claim that he did not "legally acknowledge"

4   any children, such that he was either claiming child tax

5   credits and receiving health care benefits for them

6   improperly, or that he had made a false statement on his

7   SF-86 in indicating that he had no children.  (<u>Id.</u> ¶ 75.)

8   Brown also received a memorandum concerning Plaintiff's

9   background check and his lack of cooperation in

10  responding to requests in connection with the background

11  check.  (<u>Id.</u> ¶¶ 76-77.)  The memorandum stated that

12  Plaintiff had annulled his marriage in Nevada based on a

13  false affidavit.  (<u>Id.</u> ¶ 78.)

14

15      **5.   Non-selection for forensic examiner position**

16      Before his termination, Plaintiff applied for an open

17  position as a forensic examiner.  (<u>Id.</u> ¶ 89.)  By the

18  time Brown decided not to hire Plaintiff for the

19  position, the first letter proposing his removal and the

20  letter from the U.S. Attorney's office requesting that he

21  not be a testifying agent witness had been issued.  (<u>Id.</u>

22  ¶ 92.)  Brown did not select Plaintiff for the position,

23  because a forensic examiner is required to testify in

24  criminal cases.  (<u>Id.</u> ¶ 93.)  Brown states that her

25  decision not to select Plaintiff for the forensic

26  examiner position was not an act of retaliation, nor was

27  ///

28

11

1   it based on his national origin or any other improper

2   factor.  (<u>Id.</u> ¶ 94.)

3

4   **B.   Plaintiff's Effort to Dispute Facts and Evidence**

5        **Submitted By Defendant**

6        In support of his Opposition to the Motion, Plaintiff

7   has submitted a "Response to the Defendant's [Proposed]

8   Statement of Uncontroverted Facts" ("Pl.'s Response to

9   SUF") and a "Statement of Genuine Issues of Material Fact

10  ("Pl.'s SGI").  Neither document successfully controverts

11  the material facts set forth above.

12

13       First, Plaintiff's SGI does not specifically dispute

14  the numbered facts in Defendant's SUF.  Instead, it lists

15  dozens of rhetorical questions.  For example, with

16  respect to Plaintiff's non-selection for the two

17  positions he applied for, Plaintiff's SGI poses some of

18  the following questions:

19       1.   "Were the reasons cited by Melville for the

20            selection of Shanks-Jones legitimate?"

21       2.   "Did McAllister actually make a recommendation

22            to Melville?"

23       3.   "Was  the  Plaintiff  significantly  more

24            qualified than the selectees?"

25  (Pl.'s SGI at 4.)  This listing of questions plainly is

26  insufficient to meet the opposing party's burden on a

27  motion for summary judgment.  Rule 56 requires the

28

1   opposing party to "set out specific facts showing a
2   genuine issue for trial."  Fed. R. Civ. P. 56(e)(2)
3   (emphasis added).  Plaintiff cannot rely on this document
4   to show a genuine issue of material fact to defeat
5   summary judgment.

6

7        In the other document, Plaintiff's Response to SUF,
8   Plaintiff does provide specific objections to the
9   numbered facts in Defendant's SUF.  Many of the
10  objections are nonsensical, however, including the one
11  that appears most frequently:  "Objection as to the truth
12  of the matter asserted, not that it was said." (See,
13  e.g., Pl.'s Response to SUF ¶¶ 3-5, 8-9, 12-15, 17, 19.)
14  Even more critically, the few times that Plaintiff does
15  cite to evidence in the Administrative Record, he does so
16  in passing while making argumentative statements.  These
17  statements also are not competing facts illustrating a
18  genuine issue to defeat summary judgment.

19

20                      **IV. DISCUSSION**
21       Defendant's Motion argues that Plaintiff cannot
22  establish a prima facie case that his termination
23  resulted from discrimination based on Plaintiff's
24  national origin.  (Mot. at 17.)  Even if Plaintiff could
25  establish a prima facie case of discrimination, Defendant
26  argues, the decision-maker had a legitimate, non-
27  discriminatory reason for deciding to terminate him.

28

                              13

1    (Mot. at 17-18.)  Defendant makes the same arguments
2    concerning Plaintiff's claims that his termination and
3    his non-selection for several promotions were in
4    retaliation for his protected activity under Title VII.
5    (Mot. at 18-20.)

6

7    **A.   Framework for Analysis of Title VII Discrimination**
8         **Claim**

9         "In order to prevail in a Title VII case, the
10   plaintiff must establish a prima facie case of
11   discrimination."  Vasquez v. County of Los Angeles, 349
12   F.3d 634, 640 (9th Cir. 2004)(citing Cordova v. State
13   Farm Ins. Co., 124 F.3d 1145, 1148 (9th Cir. 1997)).  To
14   establish a prima facie case, the plaintiff "must offer
15   evidence that 'give[s] rise to an inference of unlawful
16   discrimination,' either through the framework set forth
17   in McDonnell Douglas v. Green, [411 U.S. 792 (1973),] or
18   with direct or circumstantial evidence of discriminatory
19   intent."  Vasquez, 349 F.3d at 640 (quoting Texas Dep't
20   of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).[6]

21   _____

22        [6] Under the McDonnell Douglas framework, "unlawful
     discrimination is presumed if the plaintiff can show that
23   '(1) [he] belongs to a protected class, (2) [he] was
     performing according to [his] employer's legitimate
24   expectations, (3) [he] suffered an adverse employment
     action, and (4) other employees with qualifications
25   similar to [his] own were treated more favorably.'"
     Vasquez, 349 F.3d at 640 n.5 (quoting Godwin v. Hunt
26   Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) and
     citing McDonnell Douglas, 411 U.S. at 802).

27        Under the evidence-of-intent framework, the plaintiff
28                                              (continued...)

                                14

1    Once the plaintiff has established a <u>prima facie</u>
2  case, the burden shifts and the defendant must "provide a
3  legitimate, non-discriminatory reason for the employment
4  action." <u>Vasquez</u>, 349 F.3d at 641.  The defendant need
5  offer only reasons that, "<u>taken as true</u>, would <u>permit</u> the
6  conclusion that there was a non-discriminatory reason for
7  the adverse action."  <u>St. Mary's Honor Ctr.</u>, 509 U.S. at
8  509 (emphasis in original).  The defendant bears this
9  burden of production but the burden of persuasion remains
10  with the plaintiff:  "The defendant need not persuade the
11  court that it was actually motivated by the proffered
12  reasons. . . .  It is sufficient if the defendant's
13  evidence raises a genuine issue of fact as to whether it
14  discriminated against the plaintiff."  <u>Burdine</u>, 450 U.S.
15  at 254 (citing <u>Bd. of Trs. of Keene State Coll. v.</u>
16  <u>Sweeney</u>, 439 U.S. 24, 25 (1978)).

17

18    Once the defendant has provided a "legitimate, non-
19  discriminatory reason for the employment action," then
20  the burden shifts back to the plaintiff to show that this
21  articulated reason was "pretextual."  <u>Vasquez</u>, 349 F.3d

22

23  _____

      [6](...continued)
24  must present either direct evidence, that is, "'evidence
which, if believed, proves the fact [of discriminatory
25  animus] without inference or presumption,'" or
circumstantial evidence.  <u>Vasquez</u>, 349 F.3d at 640
26  (quoting <u>Godwin</u>, 150 F.3d at 1221) (alteration in
original).  A plaintiff relying on circumstantial
27  evidence alone will not succeed in establishing a <u>prima</u>
<u>facie</u> case if there is insufficient evidence of a causal
28  nexus.  <u>See</u> <u>id.</u> at 640-41.

at 641.  "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence."  Id.  "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives."  Id.

At the summary judgment stage, "the district court must look at the evidence supporting the prima facie case, as well as the other evidence offered by the plaintiff to rebut the employer's offered reasons.  And, in those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994)(clarifying the plaintiff's burden at the summary judgment stage as set forth in Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1111 (9th Cir. 1993)).  "Thus, the mere existence of a prima facie case, based on the minimum evidence necessary to raise a McDonnell Douglas presumption, does not preclude summary judgment."  Id.
///
///
///
///

**B.   Plaintiff's Claim of National Origin Discrimination Relating to His Removal**

With respect to Plaintiff's claim that his removal was motivated by discrimination on the basis of his national origin, Defendant has carried its burden to show an absence of evidence supporting Plaintiff's claim for discrimination.  Even assuming that Plaintiff could establish a prima facie case under McDonnell Douglas, Defendant has provided a legitimate, non-discriminatory reason for its termination of Plaintiff, based on concerns about his lack of cooperation with the security clearance process and the apparent lack of veracity in his responses concerning his marital status and fatherhood.  Plaintiff has not provided any evidence creating a genuine factual issue that Defendant's stated reasons were merely a pretext for discrimination. Plaintiff has offered only innuendo and speculation concerning the motivation for his removal, which is insufficient to carry his burden in opposition to summary judgment.

For example, Plaintiff attempts to refute Defendant's account of Plaintiff's "evasive and non-responsive" answers during the January 2002 interview concerning the discrepancies in his marital status and the number of children he had by arguing that the compact disc recording of the interview he has received is inaccurate

1    and not authentic.  (Opp'n at 14.)  Plaintiff contests

2    Defendant's failure to provide him with the original

3    cassette tape recording of the interview, and implies

4    Defendant acted with bad faith in failing to do so.

5    Plaintiff makes these arguments without explaining what

6    evidence would be available on the cassette tapes,

7    notwithstanding the fact that he was present for the

8    interview.[7]  He also suggests that it was "fundamentally

9    unfair" of the agency to rely on his recollection of

10   events that had occurred 17 years earlier and asks

11   rhetorically, "What normal person can remember that kind

12   of detail, that far back in life."  (Opp'n at 14 n.3.)

13   These arguments are unpersuasive, however, because it is

14   not unreasonable to expect a person to have a firm

15   recollection of his own wedding and the birth of his own

16   children.  In any event, none of these assertions

17   provides the kind of evidence or argument that would

18   carry Plaintiff's burden to oppose this Motion by showing

19   a genuine issue of material fact concerning the

20   pretextual nature of Defendant's stated reason for

21   terminating him.

22

23       Plaintiff also asserts that Defendant's

24   discriminatory animus is shown by its handling of the

25

26   ─────────────

27       [7]Moreover, Magistrate Judge Parada denied Plaintiff's
     Motion to compel production of such tapes, and Defendant
28   has represented that the tapes do not exist.  (Discovery
     Order at 1, Request No. 6.)

18

denial of his security clearance.  (Opp'n at 17.)  A
letter from the Personnel Security Unit Chief Randy
Greenstein, dated December 28, 2004, informed Plaintiff
that he had not qualified for access to classified
information.  (Def.'s SUF ¶ 73.)  The letter also stated
that Plaintiff could file a request for documents on
which the denial was based, and could file a request for
reconsideration.  (Brown Decl. Ex. 15 at AR 113-14.)
Plaintiff argues that despite making a request for such
documents, he did not receive them, and he was terminated
from his position before he had a chance to request
reconsideration.  (Opp'n at 18.)  This argument
concerning the procedural aspects of his request for
reconsideration does not refute Brown's stated basis for
removing him, nor does it cast doubt on the credibility
of Brown's stated reasons.  Plaintiff has not provided
any evidence showing that Brown had anything to do with
answering his request for the documents relied upon in
denying him a security clearance.

     Finally, Plaintiff's attempt to show that other
Special Agents did not have security clearances at the
time of Plaintiff's termination is insufficient to show
that the stated reasons for his removal were pretextual.
As pointed out by Defendant, Plaintiff has not shown that
other agents without security clearances were otherwise
similarly situated with him, an employee who had provided

evasive answers in an interview, had not cooperated with completion of background check documents, and had provided misleading or dishonest information concerning his marital status and receipt of federal health benefits.  (Reply at 6-7.)

Accordingly, the Court grants Defendant's Motion and enters judgment in its favor on Plaintiff's claim that his removal resulted from discrimination on the basis of national origin.

## C.   Plaintiff's Claim of Retaliation for Protected Activity

Plaintiff also claims that his removal and non-selection for certain positions was improperly motivated by retaliation for his earlier protected activity in protesting discrimination at the agency.  Title VII prohibits adverse employment actions against an employee who has "opposed any practice made an unlawful employment practice by this subchapter" or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3.  The analysis of a retaliation case is similar to that of a discrimination case under Title VII, where the plaintiff must establish a prima facie case of retaliation, then the employer must articulate a legitimate, non-retaliatory reason for its

1  action, and plaintiff must show that the employer's
2  reason is a pretext.  See Stegall v. Citadel Broadcasting
3  Co., 350 F.3d 1061, 1065 (9th Cir. 2003).  The elements
4  of a prima facie case for retaliation are: (1) that the
5  plaintiff engaged in a protected activity, (2) that the
6  employer subjected the plaintiff to an adverse employment
7  action, and (3) that a causal link exists between the
8  protected activity and the employer's action.  Passantino
9  v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493,
10  506 (9th Cir. 2000).

11

12      Here, Defendant has shown an absence of evidence to
13  support Plaintiff's claims, noting that the record is
14  devoid of any evidence that Plaintiff did in fact
15  participate in activity protected by Title VII.  In his
16  Opposition, Plaintiff describes the activities he
17  conducted that he claims were protected, but does not
18  provide any evidence to support his assertions.  (Opp'n
19  at 7-9.)  He cites to his own deposition and the
20  deposition of William Rogers, but states that the
21  transcripts are not yet available.  (Opp'n at 7:5-6,
22  7:18, 7:24, 9:7-8, 9:12-13.)  As an exhibit to its Reply,
23  the Government has attached the cover page of Plaintiff's
24  deposition transcript in this case, dated May 22, 2008,
25  along with the court reporter's certification dated June
26  2, 2008.  (Reply Ex. 27.)  Plaintiff's deposition
27  transcript therefore was available to him at least one
28

21

1  week before he filed his Opposition and related papers on
2  June 9, 2008.  In addition, Plaintiff has not provided
3  his own sworn declaration, nor that of William Rogers, in
4  support of his Opposition.  Plaintiff therefore has not
5  submitted evidence showing a genuine issue of material
6  fact concerning his participation in protected
7  activities.[8]

8

9       Moreover, as discussed above, Defendant has provided
10  legitimate, non-discriminatory reasons for its decision
11  to remove Plaintiff, and Plaintiff has not shown any
12  genuine issue of material fact concerning a pretextual
13  justification for those decisions.  With respect to
14  Plaintiff's non-selection for the positions in Los
15  Angeles and Ventura, Defendant has provided the
16  declaration of Rosemary Langley Melville, who states that
17  she did not select Plaintiff for those positions because
18  of her concerns about his ability to be a leader.
19  Plaintiff attempts to suggest impropriety in her
20  selection of Shanks-Jones over him for one of those
21  positions, because Shanks-Jones's application is dated
22  after the deadline for submissions and is missing a
23  required performance appraisal.  (Opp'n at 12-13.)  These
24  deficiencies made Shanks-Jones ineligible for

25

26  _____

27       [8]Plaintiff's Opposition also cites his whistle-
    blowing in 1996 and 1997 as a form of protected activity,
    but these activities are not protected by Title VII,
28  which forms the sole basis for his claims.  (Opp'n at 8.)

consideration for the position, according to Plaintiff.
Plaintiff also argues that Melville was not actually
designated as the official with authority to make the
selection, and implies that Melville only became part of
the process because Shanks-Jones had listed Melville as
one of her references. (Opp'n at 12-13.)

Plaintiff's assertions are not supported by the
record and do not create any triable issue of fact
concerning the pretextual nature of Melville's stated
reasons for choosing other applicants for the open
positions.  The evidence Plaintiff cites purporting to
show that William F. Pink, rather than Rosemary Melville,
had been designated as the selecting official for the Los
Angeles position is simply a selection form with Pink's
name typed in the box for the selection official's
signature.  (AR Vol. 11 at 2511.)  This does not show
that Pink was the only person with authority to make the
selection, or that he could not delegate his authority to
another official.  In addition, Plaintiff has not created
an issue of fact concerning whether the discrepancies in
Shanks-Jones's application were known to Melville at the
time she made her selection decision.  According to
Melville, she was provided with a list of qualified
candidates by the human resources department.  (Melville
Decl. ¶ 3.)  In any event, none of the arguments asserted
by Plaintiff casts doubt on Melville's account of the two

1   incidents leading her to believe Plaintiff did not have
2   the appropriate leadership skills for the open positions.
3
4       With respect to Plaintiff's non-selection for the
5   forensic analyst position, Defendant has offered the
6   declaration of the selecting official, Brown, who states
7   that Plaintiff could not be hired, because the U.S.
8   Attorney's Office had indicated he could not testify in
9   criminal cases.  (Brown Decl. ¶ 5.)  The ability to
10  testify was a requirement of the job.  Plaintiff has not
11  pointed to any evidence raising an issue of fact
12  concerning this explanation.
13
14      Accordingly, the Court grants Defendant's Motion and
15  enters judgment in its favor on Plaintiff's claim that
16  his removal was in retaliation for engaging in protected
17  activities under Title VII.
18
19  **D.   Plaintiff Has Not Requested, nor Made Any Showing in**
20       **Support of, a Continuance or Denial under Rule 56(f)**
21      After the parties had completed their initial
22  briefing on the Motion, Magistrate Judge Parada granted
23  in part Plaintiff's motion to compel certain additional
24  discovery responses.  On July 2, 2008, Defendant filed a
25  Report concerning the status of Defendant's additional
26  production of documents.  (Docket No. 81.)  The Report
27  identified documents that have been produced, those that
28

are still being obtained for review from archives, and those that do not exist. (Id.)  In his Supplemental Response to the Motion for Summary Judgment, filed on July 7, 2008, Plaintiff continues to raise disputes concerning discovery but does not address further the merits of the pending Motion.

Setting aside the merits of the parties' discovery disputes, Plaintiff has not made the showing necessary under Rule 56(f) to either deny the Motion or continue the hearing so that further discovery can be conducted. Rule 56 provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

Fed. R. Civ. P. 56(f).

In construing this Rule, the Ninth Circuit has indicated that the opposing party "must make clear what information is sought and how it would preclude summary judgment." Garrett v. San Francisco, 818 F.2d 1515, 1518

1  (9th Cir. 2003); <u>see also</u> <u>Tatum v. City and County of San</u>
2  <u>Francisco</u>, 441 F.3d 1090, 1100 (9th Cir. 2006).
3  Plaintiff's bald statement that he intends "to preserve
4  his right to seek further compelled discovery or a
5  negative inference," does not meet this standard.
6  Moreover, the parties' discovery cut-off date was May 30,
7  2008.  Under the Court's Scheduling Order, that is also
8  the last date for hearing any motion concerning
9  discovery.  (Scheduling Order ¶ 4.)  Any claim by
10 Plaintiff that further discovery is necessary therefore
11 cannot be a basis for denial of this Motion.

12

13                        **IV. CONCLUSION**

14      For the foregoing reasons, the Court GRANTS
15 Defendant's Motion for Summary Judgment and enters
16 Judgment in its favor on Plaintiff's claims for
17 discrimination and retaliation under Title VII.  The
18 Court separately addresses Plaintiff's appeal of the MSPB
19 decisions.

20

21
                  July 14, 2008
22 Dated: _____        _____
23                                  VIRGINIA A. PHILLIPS
                                 United States District Judge
24

25

26

27

28